IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

REGINALD CHAVIS, SR.,

        Petitioner,               No. CIV S-09-2606 LKK DAD P

    vs.

JOHN W. HAVILAND,

        Respondent.          FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner raises several challenges to the decision of the California Board of Parole Hearings (hereinafter "Board") to deny him parole at his parole consideration hearing held on June 14, 2007. The matter has been fully briefed by the parties and is submitted for decision. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

I. Procedural Background

        Petitioner is confined pursuant to a 1991 judgment of conviction entered against him in the Sacramento County Superior Court on charges of attempted murder and mayhem. (Doc. No. 1 at 1; Doc. No. 11 at 1.) Pursuant to that conviction, petitioner was sentenced to seven years to life plus eight years in state prison. (Id.)

1

As noted above, the parole consideration hearing that is placed at issue by the instant federal habeas petition was held on June 14, 2007. (Doc. No. 1 at 48.) Petitioner appeared at and participated in that hearing. (Id. at 50, et seq.) Following deliberations held at the conclusion of the hearing, the Board panel announced their decision to deny petitioner parole for two years as well as the reasons for that decision. (Id. at 135-44.)

Petitioner first challenged the Board's 2007 decision in a petition for writ of habeas corpus filed in the Los Angeles County Superior Court. (Answer, Ex. 1.) The Superior Court denied that petition in a reasoned decision on the merits of petitioner's claims. (Id.) On June 2, 2008, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal challenging the Board's 2007 decision finding him unsuitable for parole. (Answer, Ex. 2.) That petition was summarily denied. (Id.) On July 18, 2008, petitioner filed a petition for review in the California Supreme Court. (Answer, Ex. 3.) The Supreme Court denied that petition with citations to In re Clark, 5 Cal.4th 750 (1993) and In re Miller, 17 Cal.2d 734 (1941). (Id.)[1]

On September 17, 2009, petitioner filed his federal application for habeas relief in this court. Therein, petitioner contends that the Board's 2007 decision to deny him parole, and its decision to defer his next parole suitability hearing for two years, was not supported by "some evidence" that he posed a current danger to society if released from prison, as required under California law. Petitioner also raises several challenges to the conduct of the 2007 hearing. Specifically, he contends that: (1) the hearing was not held in timely manner; (2) he was unable

---

[1] Respondent argues that the California Supreme Court's citation to In re Clark and In re Miller in denying review constitutes a state procedural bar which precludes this court from considering the merits of petitioner's claims. A reviewing court need not invariably resolve the question of procedural default prior to ruling on the merits of a claim where the default issue turns on difficult questions of state law. Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Busby v. Dretke, 359 F.3d 708, 720 (5th Cir. 2004). Under the circumstances presented here, this court finds that petitioner's claims can be resolved more easily by addressing them on the merits. Accordingly, this court will assume that petitioner's claims are not procedurally defaulted and will address them on the merits.

2

to meet with his counsel for a sufficient period of time before the hearing commenced; (3) he was not allowed to read his supporting exhibits into the record and the panel members did not have sufficient time to read and consider these exhibits prior to issuing their decision; (4) the Board improperly refused to order an updated psychological examination for petitioner prior to his 2007 hearing; (5) the Board violated California Penal Code § 5011 by requiring petitioner to admit his guilt of the commitment offense as a condition to a favorable suitability decision; (6) the Board improperly considered a letter from the Sacramento County Sheriff when determining whether petitioner was suitable for parole even though the letter was not provided to petitioner prior to the hearing; (7) the Board found petitioner unsuitable for parole based, in part, on his failure to sufficiently participate in prison programming, even though petitioner is denied such programming because of his race; and (8) the Board improperly deferred petitioner's next suitability hearing for a period of two years.  Finally, petitioner claims that the Board's 2007 decision violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to equal protection of the laws.

II.  <u>Standards of Review Applicable to Habeas Corpus Claims</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  <u>See</u> <u>Wilson v. Corcoran</u>, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

3

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

4

the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. ___, ___,131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to

5

determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

III. Petitioner's Claims

    A. Due Process

As noted above, petitioner seeks federal habeas relief on due process grounds, arguing that the Board's 2007 decision to deny him parole for two years, and the findings upon which that denial was based, were not supported by "some evidence" as required under California law.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). However, a state's statutory scheme, if it uses mandatory language, "creates a presumption that parole release will be granted" when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest. Greenholtz, 442 U.S. at 12. See also Allen, 482 U.S. at 376-78.

   California's parole scheme gives rise to a liberty interest in parole protected by the federal Due Process Clause. Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th Cir. 2010); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002); see also Swarthout v. Cooke, 562 U.S. ___ , ___, 131 S. Ct. 859, 861-62 (2011) (finding the Ninth Circuit's holding in this regard to be a reasonable application of Supreme Court authority); Pearson v. Muntz, 639 F.3d 1185, 1191 (9th Cir. 2011) ("[Swarthout v.] Cooke did not disturb our precedent that California law creates a liberty interest in parole.") In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or her current dangerousness. In re Lawrence, 44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002).

   In Swarthout, the Supreme Court reviewed two cases in which California prisoners were denied parole - in one case by the Board, and in the other by the Governor after the Board had granted parole. Swarthout, 131 S. Ct. at 860-61. The Supreme Court noted that when state law creates a liberty interest, the Due Process Clause of the Fourteenth Amendment requires fair procedures, "and federal courts will review the application of those constitutionally required procedures." Id. at 862. The Court concluded that in the parole context, however, "the procedures required are minimal" and that the "Constitution does not require more" than "an opportunity to be heard" and being "provided a statement of the reasons why parole was denied."

7

Id. (citing Greenholtz, 442 U.S. at 16). The Supreme Court therefore rejected Ninth Circuit decisions that went beyond these minimal procedural requirements and "reviewed the state courts' decisions on the merits and concluded that they had unreasonably determined the facts in light of the evidence." Swarthout, 131 S. Ct. at 862. In particular, the Supreme Court rejected the application of the "some evidence" standard to parole decisions by the California courts as a component of the federal due process standard. Id. at 862-63.[3] See also Pearson, 639 F.3d at 1191.

      Under the Supreme Court's decision in Swarthout this court may not review whether California's "some evidence" standard was correctly applied in petitioner's case. 131 S. Ct. at 862-63; see also Miller v. Oregon Bd. of Parole and Post-Prison Supervision, 642 F.3d 711, 716 (9th Cir. 2011) ("The Supreme Court held in [Swarthout v.] Cooke that in the context of parole eligibility decisions the due process right is *procedural*, and entitles a prisoner to nothing more than a fair hearing and a statement of reasons for a parole board's decision[.]"); Roberts v. Hartley, 640 F.3d 1042, 1045-46 (9th Cir. 2011) (under the decision in Swarthout, California's parole scheme creates no substantive due process rights and any procedural due process requirement is met as long as the state provides an inmate seeking parole with an opportunity to be heard and a statement of the reasons why parole was denied); Pearson, 639 F.3d at 1191 ("While the Court did not define the minimum process required by the Due Process Clause for denial parole under the California system, it made clear that the Clause's requirements were satisfied where the inmates 'were allowed to speak at their parole hearings and to contest
/////

---

[3] In its per curiam opinion the Supreme Court did not acknowledge that for twenty-four years the Ninth Circuit had consistently held that in order to comport with due process a state parole board's decision to deny parole had to be supported by "some evidence," as defined in Superintendent v. Hill, 472 U.S. 445 (1985), that bore some indicia of reliability. See Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002) ("In Jancsek . . . we held that the process that is due in the parole rescission setting is the same as the Supreme Court outlined in Superintendent v. Hill . . . .")

8

1  the evidence against them, were afforded access to their records in advance, and were notified as
2  to the reasons why parole was denied.'")

3  Here, the federal habeas petition pending before the court reflects that petitioner
4  was represented by counsel at his 2007 parole suitability hearing. (Doc. No. 1 at 50.) As set
5  forth above, the record also establishes that at that hearing petitioner was given the opportunity to
6  be heard and received a statement of the reasons why parole was denied for two years by the
7  Board panel. That is all the process that was due petitioner under the U.S. Constitution.
8  Swarthout, 131 S. Ct. 862; see also Miller, 642 F.3d at 716; Roberts, 640 F.3d at 1045-46;
9  Pearson, 639 F.3d at 1191. As the Supreme Court made clear in Swarthout, the U.S.
10 Constitution does not entitle petitioner to any other procedural safeguards, including a timely
11 parole suitability hearing in conformity with state regulations. Id. In particular, petitioner's
12 claims that his suitability hearing was not held in timely manner, that he was unable to meet with
13 his counsel for a sufficient period of time before the hearing commenced, that the Board
14 improperly refused to order an updated psychological examination prior to his 2007 hearing, that
15 the Board required him to admit his guilt in connection with his commitment offense as a
16 condition to a favorable suitability decision, that the Board improperly considered a letter from
17 the Sacramento County Sheriff when determining whether he was suitable for parole even though
18 the letter was not provided to petitioner prior to the hearing, and that the Board found him
19 unsuitable for parole based, in part, on his failure to sufficiently participate in prison
20 programming, lack merit. Under the Supreme Court's holding in Swarthout, such protections are
21 not guaranteed by the federal due process clause in the parole suitability context.

22  For these reasons, it now plainly appears that petitioner is not entitled to federal
23 habeas relief with respect to his due process claims.[4]

---

[4] As set forth above, petitioner argues that he was not allowed to read into the record all of his exhibits supporting his release on parole. However, the record reflects that the Commissioners took all of petitioner's exhibits with them into the deliberating room and that they considered those exhibits before issuing their decision. (Doc. No. 1 at 134, 135.) Petitioner

B. Eighth Amendment

Petitioner claims that the Board's 2007 decision finding him unsuitable for parole also constitutes cruel and unusual punishment, in violation of the Eighth Amendment. (Doc. No. 1 at 5.) He explains that the Board's failure to "do a proportionality analysis. . . rises to the level of cruel and unusual punishment as Petitioner has already exceeded the matrix for uniform terms for like crimes, and nearly surpassed that for the more serious offense of homicide." (Id. at 9.) Petitioner claims that the Board violated his Eighth Amendment rights by failing to give "due consideration and individual consideration" to the procedural objections raised by his attorney prior to the 2007 suitability hearing. (Id. at 18.) He claims that his Eighth Amendment rights were also violated when he was prevented from meeting with his counsel sufficiently in advance of the 2007 hearing, and when he was prevented from attending "programming" in prison, all because of "illegal race discrimination policies." (Id.) Finally, petitioner claims that "cruel and unusual punishment occurs in denial of equal protections, which potentially extend time served; beyond an individual with identical term, who's not put under race base[d] restrictions and/or discontinuances." (Id. at 19.)

California parole guidelines require setting a "base term for each life prisoner who is found suitable for parole." 15 California Code of Regulations ("C.C.R.") § 2403(a). The "base term" is "established by utilizing the appropriate matrix of base terms" provided in 15 C.C.R. § 2403. 15 C.C.R. § 2403(a). Here, however, petitioner has not yet been found suitable for parole, "which is a prerequisite for the determination of a 'base term' and the calculation of a parole date." Murphy v. Espinoza, 401 F. Supp.2d 1048, 1055 (C.D. Cal. 2005). See also Irons v. Carey, 505 F.3d 846, 851 n.3 (9th Cir. 2007) (A "'determination of an individual inmate's

---

speculates that the Board members did not have enough time to read all of his exhibits because the panel took only fourteen minutes to render a decision. However, the Commissioners stated that they had considered petitioner's exhibits and there is no evidence in the record before this court to the contrary. The court also rejects any suggestion that petitioner was unable to be heard at the suitability hearing because of the Commissioners' refusal to allow him to read all of his exhibits into the record. Petitioner was heard and the Board panel considered his exhibits.

10

suitability for parole under section 3041, subdivision (b) must precede any effort to set a parole release date under the uniform-term principles of section 3041, subdivision (a).'") (quoting In re Dannenberg, 34 Cal.4th 1061, 1079-80 (2005)); Cal. Penal Code § 3041(b) (The Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting."); 15 C.C.R. § 2402(a) (The Board "shall first determine whether the life prisoner is suitable for release on parole.  Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the [Board] the prisoner will pose an unreasonable risk of danger to society if released from prison.").  "In other words, absent a determination of parole suitability by the [Board], there is no 'base term.'" Murphy, 401 F. Supp.2d at 1055.  See also Cal. Penal Code § 3041(b); 15 C.C.R. 2403(a).  Essentially, the matrix is irrelevant to making a parole suitability determination.  Instead, the Board ignores the matrix and examines the record to determine whether the prisoner poses a current danger to society.  Dannenberg, 34 Cal.4th at 1098.  Here, because petitioner has not yet been found suitable for release on parole, he remains subject to an indeterminate life sentence.  See Irons, 505 F.3d at 851 ("Under California law, prisoners serving an indeterminate sentence for . . . murder 'may serve up to life in prison, but [ ] become eligible for parole consideration after serving minimum terms of confinement.'" (quoting Dannenberg, 34 Cal.4th at 1078).

        The United States Supreme Court has held that the Eighth Amendment includes a "narrow proportionality principle" that applies to terms of imprisonment.  See Harmelin v. Michigan, 501 U.S. 957, 996 (1991) (Kennedy, J., concurring).  See also Taylor v. Lewis, 460 F.3d 1093, 1097 (9th Cir. 2006).  However, successful challenges in federal court to the proportionality of particular sentences are "exceedingly rare."  Solem v. Helm, 463 U.S. 277, 289-90 (1983).  See also Ramirez v. Castro, 365 F.3d 755, 775 (9th Cir. 2004).  "The Eighth

11

Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Harmelin, 501 U.S. at 1001 (Kennedy, J., concurring) (quoting Solem v. Helm, 463 U.S. at 288). Thus, in Lockyer v. Andrade, the United States Supreme Court held that it was not an unreasonable application of clearly established federal law for the state appellate court to affirm a sentence of two consecutive 25 year-to-life imprisonment terms for a petty theft with a prior conviction involving theft of $150.00 worth of videotapes under California's "Three Strikes" law. Andrade, 538 U.S. at 75. Similarly, in Ewing v. California, 538 U.S. 11, 29 (2003), the United States Supreme Court held that a sentence of 25 years-to-life in prison imposed on a grand theft conviction involving the theft of three golf clubs from a pro shop under California's "Three Strikes" law was not grossly disproportionate and did not violate the Eighth Amendment.

In assessing the compliance of a non-capital sentence with the proportionality principle, a reviewing court must consider "objective factors" to the extent possible. Solem, 463 U.S. at 290. Foremost among these factors are the severity of the penalty imposed and the gravity of the offense. "Comparisons among offenses can be made in light of, among other things, the harm caused or threatened to the victim or society, the culpability of the offender, and the absolute magnitude of the crime." Taylor, 460 F.3d at 1098.[5]

This court finds that petitioner's sentence does not fall within the type of "exceedingly rare" circumstance that would support a finding that his sentence violates the

---

[5] As noted by the court in Taylor, the United States Supreme Court has also suggested that reviewing courts compare the sentences imposed on other criminals in the same jurisdiction, and also compare the sentences imposed for commission of the same crime in other jurisdictions. 460 F.3d at 1098, n.7. However, "consideration of comparative factors may be unnecessary; the Solem Court 'did not announce a rigid three-part test.' See Harmelin, 501 U.S. at 1004, 111 S. Ct. 2680 (Kennedy, J., concurring). Rather, 'intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.' Id. at 1004-05, 111 S. Ct. 2680; see also Rummel v. Estelle, 445 U.S. 263, 282 (1980) ('Absent a constitutionally imposed uniformity inimical to traditional notions of federalism, some State will always bear the distinction of treating particular offenders more severely than any other State.')." Id.

Eighth Amendment.  Petitioner was convicted of attempted murder and mayhem.  In Harmelin, the petitioner received a sentence of life imprisonment without the possibility of parole for possessing 672 grams of cocaine and yet the U.S. Supreme Court found no violation of the Eighth Amendment.  In light of the Harmelin decision, as well as the decisions in Andrade and Ewing, which imposed sentences of twenty-five years to life for petty theft convictions, the sentence imposed on petitioner that is challenged here cannot be said to be grossly disproportionate.  Because petitioner does not raise an inference of gross disproportionality, this court need not compare petitioner's sentence to the sentences of other defendants in other jurisdictions.  This is not a case where "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."  Solem, 463 U.S. at 1004-05.  Nor did petitioner's inability to participate in prison programming or the Board's failure to give adequate consideration to the procedural objections raised by his attorney prior to the 2007 hearing, or to allow petitioner additional time with his counsel in advance of the suitability hearing, render his sentence cruel and unusual.

For all of these reasons, the state courts' rejection of petitioner's Eighth Amendment claim was not an unreasonable application of the proportionality standard announced by the United States Supreme Court.  Accordingly, this claim for relief should be rejected.

### C. Equal Protection

Petitioner also claims that the Board's failure to find him suitable for parole violated his Fourteenth Amendment right to equal protection of the laws.  He contends that the Board improperly found him unsuitable for parole based, in part, on his failure to participate in prison "programming," even though the prison at which he is incarcerated has "policies utilizing race as the deciding factor determining which race of individuals gets 'programming' (but which excludes your petitioner because of ethnicity)."  (Doc. No. 1 at 10, 20.)  Petitioner also alleges that in June of 2007 he received a pass to meet with his counsel but was not permitted to attend

the meeting "on the basis of being a 'black' classified individual, who was getting penalized from CDCR's illegal policy imposing punishment using race as the deciding factor." (Id. at 15.) Petitioner contends that "'racism operations' automatically inject 'grouped' penalties, and consequences, into your petitioner's purported individualized considerations, which can not be extracted." (Id. at 19.)

A petitioner raising an equal protection claim in the parole context must demonstrate that he was treated differently from other similarly situated prisoners and that the Board lacked a rational basis for its decision. McGinnis v. Royster, 410 U.S. 263, 269-70 (1973); McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir. 1991). Petitioner has failed to show that any other inmate who was similarly situated to him was granted a parole date. Petitioner has also failed to demonstrate that the Board violated his equal protection rights by applying a different suitability standard to him than that applied to others similarly situated. Petitioner's assertion that the prison system does not allow prison programming or adequate visits with counsel for Black inmates is unsupported by anything in the record before this court and therefore does not support his Equal Protection claim.[6] Accordingly, petitioner is not entitled to relief with respect to the claim that his equal protection rights were violated by the Board's conclusion in 2007 that he was not suitable for release on parole.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-

---

[6] Petitioner includes an exhibit with his petition which reflects that Black inmates in Facility 1 at his institution of confinement were restricted to "modified program" pending further investigation of an incident where a Black inmate allegedly assaulted a southern Hispanic inmate. (Doc. No. 1-1 at 12.) Disciplinary action such as that referred to by petitioner in this exhibit does not constitute a policy to deny programming to Black inmates and does not support a claim of violation of the Equal Protection Clause.

one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant); Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of appealability to review the denial of a habeas petition challenging an administrative decision such as the denial of parole by the parole board), overruled in part by Swarthout, 131 S. Ct. 859 (2011).

DATED: August 23, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
chavis2606.hc